## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALBERT E. BRANSON, DAVID J. BRANSON,  )
and ROBERT J. BRANSON,                )
                                      )
       Plaintiffs,                )
                                      )
v.                                    )    Civil Action No. 17-207-VAC-SRF
                                      )
LEE MESTRE, VINCENT BRANSON, and      )
10 NORTH FOURTH STREET TRUST, and     )
JOHN DOES 1-20, INCLUSIVE and ALL     )
UNKNOWN OWNERS OR CLAIMANTS OF        )
PROPERTY LOCATED AT SOUTH BETHANY/ )
OCEAN HIGHWAY, LOT 39, BLK 1 N. ADD,  )
INDIAN RIVER HUNDRED, SUSSEX COUNTY, )
DELAWARE TMP No. 134-17.20-199.00,    )
                                      )
       Defendants.                )
                                      )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Presently before the court in this civil action to quiet title to real property is a motion to remand the case to the Court of Chancery, filed by plaintiffs Albert E. Branson, David J. Branson, and Robert J. Branson (collectively, "plaintiffs"). (D.I. 10) Defendants Lee Mestre and Vincent Branson (together, "defendants"), oppose the motion. (D.I. 12) For the following reasons, the court will grant plaintiffs' motion to remand and award costs and attorney's fees incurred as a result of the removal of the case.

### II.    BACKGROUND

In September 2001, Dorothea Branson died, and her will was probated in the Register of Wills of Sussex County, Delaware on November 9, 2001. (D.I. 1, Ex. 48 at ¶¶ 23, 26) The will left her entire estate, including an interest in real property located at 10 N. Fourth Street, South Bethany Beach, Delaware (the "Cottage"), to her children, Albert, David, Theresa, Robert, and

Vincent. (*Id.* at ¶¶ 24, 27)  On November 21, 2001, defendant Vincent Branson accepted a distribution of cash from the estate in lieu of any interest in the Cottage. (*Id.* at ¶ 30)

As executor of the estate, plaintiff David Branson asked each sibling to convey his or her interest in the Cottage to the estate in the summer of 2004 to perfect Dorothea's interest in the Cottage. (*Id.* at ¶ 33)  All siblings, except defendant Vincent Branson, deeded their interests to the estate. The quitclaim deeds conveying 80% legal title in the Cottage to the estate were recorded on October 27, 2005. (*Id.*)

In September 2004, Vincent Branson initiated an action in the Court of Chancery against plaintiffs for specific performance of an alleged oral agreement or, alternatively, for a partition and sale of the Cottage. (*Id.* at ¶ 34)  Vice Chancellor Noble rejected both claims on September 1, 2010, finding that Vincent Branson had no interest in the Cottage. (*Id.* at ¶ 35)  Vice Chancellor Noble's ruling was affirmed by the Supreme Court of Delaware on December 9, 2011. (*Id.* at ¶ 36); *Branson v. Branson*, 35 A.3d 418 (Del. 2011).

On June 7, 2012, plaintiffs filed an action to quiet title against Vincent Branson in the Court of Chancery. (*Id.* at ¶ 37)  On July 19, 2013, the Court of Chancery ruled against Vincent Branson on summary judgment, dismissing Vincent Branson's counterclaims and granting plaintiffs' request to clear title. (*Id.* at ¶ 42)  The Court of Chancery shifted fees to Vincent Branson, describing his litigation conduct as "purely vexatious legal maneuvers," and characterizing his arguments as "obviously meritless." (*Id.* at ¶¶ 42-43); *Branson v. Branson*, C.A. No. 7603-VCG, 2013 WL 3789755, at *5 (Del. Ch. July 19, 2013), *aff'd*, 91 A.3d 561 (Del. 2014).  The Supreme Court of Delaware affirmed the Court of Chancery's ruling on April 15, 2014. (*Id.* at ¶ 46)

On August 3, 2012, Vincent Branson filed an action against plaintiffs in Delaware Superior Court for "abusive and coercive conduct" in the Court of Chancery litigation. (*Id.* at ¶ 48)  The Superior Court dismissed his claims with prejudice on September 21, 2012, citing the Court of Chancery's 2010 ruling and imposing sanctions against Vincent Branson for his "frivolous attempt to relitigate" the 2010 ruling. (*Id.* at ¶ 49)  On March 19, 2013, the Supreme Court of Delaware affirmed the Superior Court's dismissal of the action and award of sanctions. (*Id.* at ¶ 50)

On April 19, 2013, Vincent Branson filed Amended Exceptions to the Final Account in the Court of Chancery Office of the Register of Wills for Sussex County, alleging the existence of an oral agreement between Dorothea and Albert Branson requiring Albert to leave the Cottage to the grandchildren in fee simple in exchange for a life estate. (*Id.* at ¶ 51)  On April 30, 2013, Vice Chancellor Glasscock ruled that Vincent Branson had no standing to bring the Exceptions because he had already taken his full and final distribution of the estate in cash. (*Id.* at ¶ 53)  Vice Chancellor Glasscock issued sanctions and shifted fees in the case. (*Id.* at ¶ 55)

On February 12, 2014, defendant Lee Mestre brought an action in the Circuit Court for Montgomery County, Maryland (the "First Maryland Action") against plaintiff David Branson and defendant Vincent Branson based on the alleged oral contract between Dorothea and Albert Branson. (*Id.* at ¶¶ 56-58)  Before David Branson was served, Mestre filed a proposed consent order granting partial summary judgment on liability against Vincent Branson, which was granted on April 9, 2014. (*Id.* at ¶ 60)  On August 12, 2014, Vincent Branson and Mestre formed "The 10 North Fourth Street Trust" (the "Trust") under Maryland law, naming Mestre as the trustee and Albert Branson as the beneficiary of the Trust, which purportedly contained title to 20% of the Cottage. (*Id.* at ¶¶ 62, 65)  Thereafter, Vincent Branson and Mestre allegedly

3

induced the court in the First Maryland Action to enter an August 26, 2014 order approving a settlement agreement commanding Vincent Branson to execute a quitclaim deed to Mestre as trustee of the Trust. (*Id.* at ¶¶ 72, 76) David Branson was not served with the summons and complaint in the First Maryland Action until September 9, 2014. (*Id.* at ¶ 80) On October 8, 2014, Vincent Branson recorded a quitclaim deed with the Assessment Division of Sussex County, Delaware that quit claimed the purported 20% title interest held by Vincent Branson in the Cottage. (*Id.* at ¶ 77)

Mestre voluntarily dismissed the First Maryland Action without prejudice on January 15, 2015. (*Id.* at ¶ 81) On January 20, 2015, Mestre filed a new action in the Circuit Court of Montgomery County, Maryland (the "Second Maryland Action") which was identical to the complaint that was voluntarily dismissed on January 15, except that David Branson was the sole defendant. (*Id.* at ¶ 82) Mestre's attorney executed and published a notice of *lis pendens* on January 22, 2015, which stated that the orders dismissing the First Maryland Action had been recorded, and Mestre was the trustee of the Trust in accordance with the orders. (*Id.* at ¶¶ 83-84)

On September 15, 2015, plaintiffs filed a verified complaint in the Court of Chancery, seeking to clear title to the Cottage. (D.I. 1, Ex. 7) The complaint set forth causes of action for declaratory judgment, civil contempt, slander of title, *prima facie* tort, and civil conspiracy. (*Id.* at ¶¶ 80-103) Plaintiffs filed an amended complaint on May 20, 2016, adding a cause of action to quiet title and maintaining causes of action for civil contempt and slander of title. (D.I. 1, Ex. 48 at ¶¶ 85-104) By letter dated February 1, 2017, Vice Chancellor Glasscock scheduled a March 1, 2017 oral argument on the pending motions to dismiss and for summary judgment. (D.I. 1, Ex. 87) On February 14, 2017, the Court of Chancery entered an order dismissing the

4

causes of action for civil contempt and slander of title in the amended complaint, leaving only the count to quiet title to the Cottage.  (D.I. 1, Ex. 89)

Defendants filed a notice of removal to the United States District Court for the District of Delaware on February 28, 2017.  (D.I. 1)  As a result of the filing of the notice of removal, the March 1, 2017 hearing on the motions pending before the Court of Chancery did not go forward. On March 20, 2017, plaintiffs filed the instant motion to remand the action to the Court of Chancery.  (D.I. 10)

## III.   ANALYSIS

### A.   Timeliness of Removal

Plaintiffs contend that defendants' notice of removal is time-barred because the complaint was filed in the Court of Chancery on September 15, 2015, and defendants did not seek removal of the action until February 28, 2017, well after the thirty-day deadline imposed by 28 U.S.C. § 1446(b)(1).  (D.I. 10 at ¶¶ 1-3)  In response, defendants allege that their notice of removal is timely pursuant to 28 U.S.C. § 1446(b)(3) because it was filed within thirty days from the Court of Chancery's February 1, 2017 letter, which asserted jurisdiction on the merits of the quiet title claim without first resolving defendants' jurisdictional challenges.  (D.I. 12 at 5)

Section 1446(b) dictates the timeliness of removal, providing that "the notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b)(1).  If the basis for removal is not set forth in the initial pleading, however, a defendant must remove within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

Thus, an action must be removed within thirty days of receipt of the initial pleading when grounds for removal arise in the initial pleading. However, if the initial pleading does not give rise to grounds for removal, then the thirty days begins to run after receipt of a subsequent document setting forth grounds that warrant removal. *See Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759 (5th Cir. 2000) ("[T]he purpose of the removal statute [is] to encourage prompt resort to federal court when a defendant first learns that the plaintiff is alleging a federal claim.").

The term "other paper," as used in § 1446(b)(3), has been construed narrowly by some courts to include only documents similar to a pleading, motion, or order, and more broadly by other courts to include discovery documents and correspondence between the parties and their attorneys. *See Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 77-78 (1st Cir. 2014) (describing circuit split and citing cases). The term is generally used to clarify the existence of federal subject matter jurisdiction, rather than to establish it. *See Dupree v. PennyMac Loan Servs, LLC*, 2016 WL 5875016, at *3 (N.D. Tex. Sept. 2, 2016) (citing *Lukawski v. FlightSafety Texas, Inc.*, 2009 WL 2523808, at *2 (N.D. Tex. Aug. 17, 2009)). Consequently, courts have rarely relied on the "other paper" language of § 1446(b)(3) to determine if subject matter jurisdiction exists on the basis of a federal question. *Id.*

The defendant bears the burden of showing the timeliness of removal under § 1446(b). *See Mims v. 84 Lumber Co., et al.*, C.A. No. 13-298-SLR-CJB, 2013 WL 4775306, at *2 (D. Del. Sept. 6, 2013) (citing *Scearce v. 3M Co.*, 2013 WL 2156060, at *3 (D.N.J. May 16, 2013)). Defendants have failed to meet their burden in the present case because the Court of Chancery's February 1 letter does not clarify the federal nature of an existing claim, and therefore does not

6

qualify as an "other paper" in accordance with 28 U.S.C. § 1446(b).[1] The text of the letter states as follows:

> This will confirm that oral argument is now scheduled on the pending Cross Motions for Partial Summary Judgment and Defendant's Motion to Dismiss on **March 1, 2017 at 1:00 p.m.** at the Court of Chancery, Georgetown.

(D.I. 1, Ex. 87) (emphasis in original) Nothing in the letter could reasonably be construed to provide notice that the case is removable because the letter does not expressly refer to any claims, pleaded or otherwise, which are federal in nature. Even if the term "other paper" is construed broadly, the Court of Chancery's February 1 letter does not qualify as an "other paper" under § 1446(b)(3) because the letter fails to establish the federal nature of an existing claim.

The cases cited by defendants support the court's conclusion that defendants' notice of removal is untimely. In *Babasa v. LensCrafters, Inc.*, the Ninth Circuit concluded that a settlement letter constituted an "other paper" under 28 U.S.C. § 1446(b) because it provided notice of the amount in controversy, which is relevant to establishing federal diversity jurisdiction. 498 F.3d 972, 975 (9th Cir. 2007). Likewise, in *Romulus v. CVS Pharmacy, Inc.*, the First Circuit held that email correspondence between the parties concerning damages constituted an "other paper" under § 1446(b)(3) because it was "the first document in which the plaintiff puts the defendant on notice that the criteria for removal are met." 770 F.3d 67, 78-79 (1st Cir. 2014). In *Peters v. Lincoln Electric Co.*, the Sixth Circuit found that a deposition transcript constituted an "other paper" under § 1446(b) because the testimony revealed for the first time that the claims fell under the scope of the federal Employment Retirement and Income Security Act of 1974 ("ERISA"). 285 F.3d 456, 465-66 (6th Cir. 2002). In contrast, the Court of

---

[1] Defendants do not dispute that the notice of removal would be untimely under § 1446(b) if based on either the original or amended complaints, filed on September 15, 2015 and May 20, 2016, respectively. (D.I. 12 at 3-4)

Chancery's February 1 letter provides no insight into the nature of the claims, the citizenship of the parties, or the amount in controversy which could be used to establish federal jurisdiction.

During oral argument on the pending motion to remand, defendants raised for the first time the Eastern District of Pennsylvania's decision in *Powell ex rel. Powell v. SmithKline Beecham Corp.* to bolster their arguments on the timeliness of the notice of removal. 2013 WL 5377852 (E.D. Pa. Sept. 26, 2013). However, the court in *Powell* granted remand, and the decision does not support defendants' position. *Id.* at *13. The ruling addressed the issue of "whether a defendant can remove to federal court a previously remanded case when jurisdiction depends on diversity and more than a year after the action commenced, the legal basis of the first remand is invalidated by an appellate court in a similar, but unrelated action." *Id.* at *1. The *Powell* decision is distinguishable from the present case on critical factual issues because it involves the viability of a second notice of removal premised on diversity jurisdiction, as opposed to a first notice of removal premised on federal question jurisdiction. *Id.*

The *Powell* court's timeliness analysis under § 1446(b) is also inapposite. *Id.* at *10. In *Powell*, the court evaluated whether a Third Circuit opinion resulting from a district judge's certification of a question for interlocutory appeal in an unrelated litigation constituted an "order" for purposes of § 1446(b)(3). *Id.* The *Powell* court ultimately concluded that the Third Circuit decision did not meet the § 1446(b) standard's definition of an "order" because the decision did not expressly authorize the defendant to remove other cases. *Id.* The *Powell* court offered no insight as to what might constitute an "other paper" under § 1446(b)(3), which is the pertinent issue before the court in the instant matter.

Defendants have failed to direct the court to any document filed within thirty days of the notice of removal which provides notice of federal jurisdiction sufficient to establish the

removability of the case. Consequently, defendants' notice of removal is time-barred pursuant to 28 U.S.C. § 1446(b).

## B. Federal Question Jurisdiction

Plaintiffs allege that defendants' notice of removal is improper because removal on the basis of federal question jurisdiction may only be premised on the allegations in the complaint. (D.I. 10 at ¶¶ 4-6) In response, defendants contend that a federal question exists as to whether the due process clause is violated when Delaware asserts long-arm jurisdiction over defendants who have only minimal contacts with Delaware.[2] (D.I. 12 at 8-10) Moreover, defendants allege that only a federal court may resolve the issue of whether the Court of Chancery must credit the orders of the Maryland court in accordance with the full faith and credit clause.[3] (*Id.* at 10-11)

To remove a case to federal district court, a party must establish that the district court has original jurisdiction by either a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332, 1441. "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Kline v. Security Guards, Inc.*, 386 F.3d 246, 252 (3d Cir. 2004) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). If the case could not have been filed originally in federal court, then removal under 28 U.S.C. § 1441 is improper and remand is appropriate. *Id.* (citations omitted). "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

---

[2] During the oral argument held on June 14, 2017, defendants alleged that their sole basis for federal question jurisdiction rested on the full faith and credit clause. Nonetheless, the court addresses the due process allegations in this decision because those allegations were fully briefed.

[3] During the June 14, 2017 oral argument, defendants alleged that this court does not have jurisdiction over the case.

pleaded complaint." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 251 (3d Cir. 2004) (internal citations and quotation marks omitted).

A federal court must remand a removed case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The party seeking removal bears the burden of demonstrating that removal is proper. *Steel Valley Auth. v. Union Switch Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 602 (D. Del. 2002). According to the Third Circuit Court of Appeals, it "is settled that the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). In determining whether remand based on improper removal is appropriate, the court "must focus on the plaintiff's complaint at the time the petition for removal was filed." *Id.*; *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985).

Defendants have failed to establish a basis for federal question jurisdiction.[4] The remaining claim underlying the amended complaint is a cause of action to quiet title under Delaware law. (D.I. 1, Ex. 48 at ¶¶ 85-104) No federal rights are implicated by the amended complaint.

The Court of Chancery's February 1 letter setting a hearing date to consider the pending motions to dismiss and motions for summary judgment does not alter the court's analysis.[5] Defendants' notice of removal is based on the speculative assumption that the Court of Chancery will resolve the pending motions for summary judgment before addressing the jurisdictional

---

[4] Defendants do not allege the existence of diversity of citizenship. (D.I. 12 at 2) ("The parties have stipulated in the joint letter to the court dated March 24, 2017, that defendants are not raising citizenship in the context of diversity under 28 U.S.C. § 1332 . . . .").

[5] During the June 14, 2017 oral argument, counsel for defendant Mestre conceded that, had the Court of Chancery dispensed with the pending motions before it on the papers instead of scheduling an oral argument, there would be no basis for removal to this court.

issues raised in the motions to dismiss.  (D.I. 1 at ¶¶ 6-9)  However, the jurisdictional issues

identified in the motions to dismiss are federal defenses which do not create original federal

jurisdiction or allow for removal.  "Federal jurisdiction cannot be predicated on an actual or

anticipated defense: 'It is not enough that the plaintiff alleges some anticipated defense to his

cause of action and asserts that the defense is invalidated by some provision of [federal law].'"

*Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R. Co. v.

Mottley*, 211 U.S. 149, 152 (1908)).

Moreover, the notice of removal's invocation of the full faith and credit clause to resolve

discrepancies between rulings from the state courts of Maryland and Delaware does not provide

an independent basis of federal jurisdiction.  *See Luterman v. Levin*, 318 F. Supp. 11, 13 (D. Md.

1970) ("The full faith and credit clause does not provide an independent basis of jurisdiction."

(citing *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 291-92 (1888))).  Otherwise, "any attempt,

at any time or place, by any person, to enforce the provisions of any state statute or judgment

would be, without more, a subject of federal jurisdiction." *People of State of Ca. v. Bruce*, 129

F.2d 421, 424 (9th Cir. 1942).  Invocation of the full faith and credit clause does not constitute a

claim arising under the Constitution for purposes of 28 U.S.C. §§ 1331 or 1441. *Luterman*, 318

F. Supp. at 13.  Rather,

> [i]t only prescribes a rule by which courts, Federal and state, are to be guided
> when a question arises in the progress of a pending suit as to the faith and credit
> to be given by the court to the public acts, records, and judicial proceedings of a
> state other than that in which the court is sitting. . . .  [T]o invoke the rule which it
> prescribes does not make a case arising under the Constitution or laws of the
> United States.

*State of Minn. v. N. Sec. Co.*, 194 U.S. 48, 72 (1904).  Consequently, defendants' assertion of the

full faith and credit clause does not preclude the court from remanding the present action to the

Court of Chancery.

11

### C.    Plaintiffs' Request for Fees

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." When removal of an action is improper, the plaintiff may be entitled to recover attorney's fees, costs, and expenses associated with opposing removal, regardless of whether the action was removed in bad faith. *See Mints v. Educational Testing Serv.*, 99 F.3d 1253, 1259 (3d Cir. 1996). However, an award of fees is appropriate only when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "[A] district court has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)." *Mints*, 99 F.3d at 1260.

Having considered the record presently before the court and the parties' submissions, the court concludes that defendants' notice of removal is objectively unreasonable. Specifically, defendants' notice of removal is based on speculative factual assertions and sparse, inapposite case authorities. No authority cited by the parties or located by the court supports defendants' position that the administrative act of scheduling a hearing date on pending motions is adequate to place the parties on notice that a federal question exists. The case law uniformly emphasizes that federal question jurisdiction must originate from a well-pleaded complaint, and affirmative defenses raising issues of federal law are inadequate to establish federal subject matter jurisdiction. Consequently, plaintiffs' request for fees is granted.

Within thirty (30) days of the date of this ruling, plaintiffs are to provide the court and opposing counsel with an accounting of attorneys' fees and costs, limited to expenses incurred as the result of the removal. Plaintiffs are to attach a form of Order for the relief requested.

12

## V.    CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand and request for fees are granted.

(D.I. 10)  An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P.

72(a), and D. Del. LR 72.1(a)(2).  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Memorandum Opinion.  Fed. R.

Civ. P. 72(a).  The objections and responses to the objections are limited to five (5) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

www.ded.uscourts.gov.

Dated: June 16th, 2017

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

13